[Cite as *State v. Dibble*, 2017-Ohio-9321.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-629 |
| v. | : | (C.P.C. No. 10CR-1958) |
| Lawrence A. Dibble, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee. **Argued:** *Steven L. Taylor.*

**On brief:** *Carpenter Lipps & Leland LLP*, *Kort W. Gatterdam*, and *Erik P. Henry* for appellant. **Argued:** *Kort W. Gatterdam.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Lawrence A. Dibble, appeals an entry of the Franklin County Court of Common Pleas filed on August 16, 2016 which denied his motion to suppress evidence obtained in a search of his house. Because we find that the affidavit submitted for the search warrant did not supply probable cause to search Dibble's house and was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," we reverse. (Citations and internal quotation marks omitted.) *See United States v. Leon*, 468 U.S. 897, 923 (1984).

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 29, 2010, a Franklin County Grand Jury indicted Dibble for 20 counts of voyeurism and one count of sexual imposition. (Mar. 29, 2010 Indictment.) The voyeurism counts were based on videotape recovered from Dibble's home which

apparently showed girls in their early and mid-teens disrobing in the locker room of the school where Dibble was then a teacher. *Id.* Dibble pled not guilty on March 31. (Mar. 31, 2010 Plea Form.) Shortly thereafter, on May 12, Dibble filed a motion to suppress. (May 12, 2010 Mot. to Suppress.)

{¶ 3} The trial court held a hearing on the motion on June 29, 2010. (June 29, 2010 Hearing Tr., filed Aug. 17, 2010.) At the hearing, the defense introduced four exhibits: the warrant documents, the complaint against Dibble, the arrest information form, and the uniform incident report. (Hearing Exs. 1-4, filed Aug. 17, 2010.) The affidavit in support of the warrant provided the following statement in support of probable cause:

> On February 2, 2010 Victim #1 reported to the Upper Arlington Police Department that while a student at The Wellington School one of her teacher's [sic], Lawrence A Dibble touched her inappropriately. Victim #1 stated that she was rehearsing line [sic] for a play with Dibble in the school when he asked for a reward for getting his lines correct. He asked to touch Victim #1's stocking on her leg. Upon touching the stocking Dibble then proceeded to run his hand up Victim #1's skirt brushing his fingers across her vaginal area. Victim #1 stated she was shocked and froze as Dibble then ran his hands over her buttocks, and lower abdomen area. Victim #2 was with Victim #1 while she made the report. Victim #2 stated she also had inappropriate contact with Dibble. Victim #2 stated it was after she had graduated high school where Dibble had also been her teacher. Victim #2 stated that Dibble had taken photo's [sic] of her nude vaginal area during one of their meetings where inappropriate touching was involved. Victim #2 told investigators that Dibble used a digital camera to take the photo's [sic], and made her wear a pillow case over her head while he took them.
>
> On February 2, 2010 Victim #1 went to The Wellington School at the direction of the Upper Arlington Police wearing a recording device. She had a conversation with Dibble about the inappropriate touching where he stated "I just wasn't thinking". [sic]

> Investigators from Upper Arlington believe Dibble's computers, camera's [sic], media storage devices, etc. may contain correspondence, and photos to substantiate Victim #1 and Victim #2's claims.

(Hearing Ex. 1 at 5.)

{¶ 4} Only one witness testified at the hearing, the detective who had sworn out the affidavit for the search warrant, obtained the search warrant, and conducted the search. (Hearing Ex. 1 at 5-6; June 29, 2010 Hearing Tr. at 3-4.) The detective admitted that "Victim #2," also known as E.K., was legally an adult when the nude photographs were taken and the touching occurred. *Id.* at 18-20. He also admitted that E.K. had told him the contact and photographs were consensual. *Id.* at 35. He admitted that he did not refer to E.K. as a "victim" in any other report he filed in connection with the case and that his uniform incident report stated there was only one victim. *Id.* at 5-9. However, he testified that he felt that E.K. had seemed uncomfortable about her activities with Dibble and still considered her a victim. *Id.* at 15, 35.

{¶ 5} The detective admitted that the information given to him by "Victim #1," also known as E.S., did not, on its own, provide probable cause to search Dibble's house. *Id.* at 13. That is, E.S.'s report of unwanted physical contact was contact that occurred only at school. (Hearing Ex. 1 at 5.) Allegations regarding photographs taken with a digital camera came only from E.K., who reported that she had consented to the photographs and was an adult when they were taken. *Id.*

{¶ 6} The detective testified at the trial court's hearing on Dibble's motion to suppress that, in addition to providing the affidavit, he was sworn in before the municipal court judge issuing the search warrant and then had a discussion with that judge. (June 29, 2010 Hearing Tr. at 33.) No recording or transcript or other form of preservation of the record was made of the hearing before the municipal judge who issued the search warrant concerning Dibble. So the evidence before the trial judge of the common pleas court was primarily that of the sworn testimony of the detective involved in all stages of obtaining and executing the search warrant and an affidavit from the detective sworn in support of the warrant. This detective testified before the common pleas court on the motion to suppress that he told the issuing judge more background

about how Dibble had known E.K. and E.S. since seventh grade, and how Dibble took photographs of students in unitards which were somewhat see-through. *Id.* at 33-34.

{¶ 7} On July 1, 2010, the trial court concluded that the evidence must be suppressed. (July 1, 2010 Decision & Entry Granting Suppression.) It found that the detective knowingly and intentionally made false statements in referring to E.K. as a victim in order to obtain a search warrant for Dibble's house. *Id.* at 4-10. The trial court did not perceive that the photographs of E.K. were unlawful and it found that the evidence regarding E.S. did not give probable cause to search Dibble's house. *Id.* at 8. That is, nothing about the fact that Dibble touched E.S. inappropriately at school supported an inference of illegal activity occurring in Dibble's home such that a judicial warrant should have issued to search it. *Id.*

{¶ 8} This Court affirmed the trial court's decision on August 4, 2011. *State v. Dibble*, 195 Ohio App.3d 189, 2011-Ohio-3817, 959 (10th Dist.).

{¶ 9} The Supreme Court of Ohio reversed our decision on October 10, 2012. *State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630. The high court found that the trial court's construction of the definition of "victim" was too hypertechnical and narrow. *Id.* at ¶ 20-22. The Supreme Court opined that the detective had merely selected "victim" as a generic term to describe E.K. and E.S. so as to avoid identifying them by name and that the trial court had abused its discretion in finding that the detective had intentionally misled the municipal judge who reviewed the search warrant affidavit. *Id.* at ¶ 22-26.

{¶ 10} On remand, Dibble filed with the trial court a new motion to suppress. (Feb. 4, 2013 Mot. to Suppress.) His counsel argued in the new motion that, although the detective may have had a subjective basis to refer to E.K. as a "victim," Dibble's conduct toward her did not constitute a crime as it was described in the affidavit in support of the warrant. *Id.* at 6. There is no dispute that no probable cause existed to search Dibble's house based on statements concerning E.K. Additionally, the detective had admitted no probable cause existed to search Dibble's house based on Dibble's alleged inappropriate touching of E.S. at school. *Id.* at 6-8.

{¶ 11} The parties thoroughly briefed the matter and the trial court heard oral argument at a new hearing. (Mar. 12, 2013 Hearing Tr., filed Oct. 24, 2013.) The State indicated at the outset that it wanted to call the municipal judge as a witness. *Id.* at 5. But

the trial court declined to allow it based on Ohio Rule of Criminal Procedure 41(C)(2), which allows testimony in support of a warrant to be admitted into evidence only "if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit." *Id.* at 5-7. The State did not otherwise seek to present any new evidence and neither did Dibble's counsel in his defense. *Id.* at 3-6. Instead, the parties relied on materials and testimony developed during the original June 2010 suppression hearing. *Id.*

{¶ 12} On April 30, 2013, the trial court denied the new motion to suppress. (Apr. 30, 2013 Decision & Entry Denying Suppression.) The trial court found that, based on the affidavit supporting the warrant, there was no probable cause to search Dibble's house. *Id.* at 4-8. However, it found that because the Supreme Court had determined that the trial court had erred in finding that the detective had intentionally misled the municipal judge, it could no longer conclude that the detective had not exercised good-faith reliance on the warrant. *Id.* at 8-9. It also found that the municipal judge who issued the search warrant of Dibble's home did not "wholly abandon[] her role." *Id.* at 9. The trial court found that the case did not present a warrant "so inadequate in terms of its particularity of the place to be search[ed] or items to be seized as to" otherwise circumvent the good-faith reliance exception. *Id.* at 9. But, despite quoting the four circumstances in which good-faith reliance on a warrant does *not* excuse a violation of the Fourth Amendment, the trial court did not discuss or consider the third circumstance, where "an officer purports to rely upon a warrant based on an affidavit 'so lacking' in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Apr. 30, 2013 Decision & Entry at 8-9, quoting *State v. George*, 45 Ohio St.3d 325, 332-33 (1989), citing *Leon* at 923).

{¶ 13} After the trial court denied Dibble's motion to suppress, on June 11, 2013 Dibble pled "no contest" to each of the multiple counts of the indictment. (June 11, 2013 Plea Form; June 11, 2013 Hearing Tr. at 14, filed Oct. 24, 2013.) On August 15, 2013, the trial court held a sentencing hearing and sentenced Dibble to serve 6 months on each of the 17 fifth-degree felony counts of voyeurism, 90 days on each of the three second-degree misdemeanor counts of voyeurism, and 60 days on the single count of sexual imposition. (Aug. 16, 2013 Entry at 2.) The trial court ordered Dibble to serve 8 of the fifth-degree

felony 6-month voyeurism terms (Counts 1-5, 7, 9, and 10) consecutively to each other. *Id.* It permitted Dibble to serve all other sentences on all other counts concurrently with each other and the 8 consecutively sentenced fifth-degree felony counts for a total term of imprisonment of 4 years. *Id.*

{¶ 14} On December 30, 2014, this Court reversed and remanded. *State v. Dibble*, 10th Dist. No. 13AP-798, 2014-Ohio-5754. We determined that the State could have sought leave to appeal the trial court's initial determination post-Supreme Court remand that the affidavit did not supply probable cause, but it did not do so. *Id.* at ¶ 13-14. We concluded that because the State did not elect to appeal the trial court's finding that the affidavit did not supply probable cause, we could not consider that question. *Id.* at ¶ 11-14. We also determined that the trial court should have engaged, but did not, in a further examination of the affidavit to determine whether the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at ¶ 23. We thus remanded for the trial court to consider that issue. *Id.* at ¶ 23, 29.

{¶ 15} On March 3, 2015, we denied reconsideration and certification of a conflict and, on September 16, 2015, the Supreme Court declined to exercise any further jurisdiction concerning the affidavit and search warrant at issue in Dibble's second motion to suppress. *State v. Dibble*, 10th Dist. No. 13AP-798 (Mar. 3, 2015) (memorandum decision); *State v. Dibble*, 2014-Ohio-5754, *discretionary appeal not allowed*, 143 Ohio St.3d 1464, 2015-Ohio-3733.

{¶ 16} On remand, and before a new trial judge, the parties engaged in further briefing and the trial court held two hearings. At the first hearing, on March 10, 2016, each party presented arguments but no new evidence. (Mar. 10, 2016 Hearing Tr., filed Oct. 12, 2016.) At the second hearing, on August 16, 2016, the trial court raised the issue of whether it had been established in prior proceedings that probable cause to search Dibble's house had been lacking. (Aug. 16, 2016 Hearing Tr. at 5, filed Oct. 12, 2016.) The State requested that the trial court limit its decision to the issue of whether the detective had a good-faith basis to rely on the warrant issued by the municipal court judge. *Id.* at 15. At this point, the trial court opined that this Court had "missed the point" of the Supreme Court's 2012 decision. *Id.* at 5; *see also id.* at 15. The trial court therefore issued a decision and entry later the same day finding that the affidavit did "contain sufficient

facts to support a finding of probable cause" because a camera was "used to take illicit photos of the minor victim" and the affidavit disclosed two instances of "deviant behavior" which were "connect[ed]" to the "location specified in the warrant." (Aug. 16, 2016 Decision & Entry at 1-2.) It then concluded, "an affidavit that contains evidence sufficient to support a finding of probable cause is certainly not so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 2.

{¶ 17} Dibble now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 18} Dibble raises a single assignment of error for review:

> THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHTS UNDER THE OHIO AND U.S. CONSTITUTIONS AND RIGHTS PROTECTED UNDER THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE AFFIDAVIT AT ISSUE WAS SO LACKING IN INDICIA OF PROBABLE CAUSE AS TO RENDER OFFICIAL BELIEF IN ITS EXISTENCE ENTIRELY UNREASONABLE.

## III.  DISCUSSION

### A.  Whether Probable Cause is Law of the Case

{¶ 19} In its April 30, 2013 decision and entry, the trial court denied Dibble's motion to suppress but found that, based on the affidavit supporting the warrant, there was no probable cause to search Dibble's house. (Apr. 30, 2013 Decision & Entry Denying Suppression at 4-8.) We reversed and remanded so that the trial court could fulfill its "obligat[ion] to conduct further examination of the affidavit to determine whether it is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Dibble*, 2014-Ohio-5754, ¶ 23, 29. However, we also noticed from the record that the State did not seek leave to appeal the trial court's determination that the search warrant was not supported by probable cause. *Id.* at ¶ 11-14.

{¶ 20} In the instant appeal, the State argues that, even though it did not cross-appeal the trial court's April 2013 decision, the absence of probable cause has not been established as law of the case. (State's Brief at 18-23.) The State also argues that, because the trial court declined to address the State's claim that Crim.R. 41(C) is unconstitutional, the trial court did not consider unrecorded oral statements allegedly made by the

detective to the issuing municipal judge, and thus, the April 2013 finding on probable cause was solely based on the content of the warrant affidavit. *Id.* at 21-22. In short, even though the State focused its arguments before the trial court on the good-faith exception and not probable cause, the State argues that the trial court was still free to find that probable cause existed based on the full record, including statements allegedly made by the detective to the municipal judge. *Id.* at 21-23. The State argues that we should affirm the trial court in denying Dibble's motion to suppress, based on the affidavit and the statements allegedly made by the detective to the municipal judge and also find that reliance on the warrant was reasonable. *Id.* at 18-24.

{¶ 21} The law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). This Court has also recognized that, "[t]he doctrine of the law of the case is not limited to the explicit determinations of a reviewing court, but also extends to determinations by a trial court that could have been appealed but were abandoned by a failure to do so." *Beagle v. Beagle*, 10th Dist. No. 09AP-353, 2009-Ohio-6570, ¶ 22, citing *Clymer v. Clymer*, 10th Dist. No. 95APF02-239, 1995 WL 571445, 1995 Ohio App. LEXIS 4303, *8 (Sept. 26, 1995); *see accord Klaus v. Klosterman*, 10th Dist. No. 16AP-273, 2016-Ohio-8349, ¶ 15. "Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan* at syllabus.

{¶ 22} While a review of the record does not support that the State voluntarily abandoned its arguments on probable cause, when it did not cross-appeal the trial court's finding that probable cause was lacking, it forfeited the argument for subsequent proceedings in this same matter. *See Dibble*, 2014-Ohio-5754, ¶ 12-14. The State argues that an unappealed ruling of law in a pending case should not create law of the case if the ruling can still be argued to be incorrect. (State's Brief at 21.) We disagree in this case. And in doing so, we consider that we could have noticed plain error in the trial court's finding of no probable cause but we did not. *Dibble*, 2014-Ohio-5754, ¶ 11-14, in passim.

{¶ 23} We recognize that the Staff Notes to the 2013 amendments of App.R. 3 provide:

> App.R. 3(C)(2) is amended to clarify that a party seeking to defend a judgment on a ground other than that relied on by the trial court need not file a cross-assignment of error to do so; instead, that party may simply raise the arguments in the appellate brief.

App.R. 3, staff notes (July 1, 2013 Amend.)  We also recognize that we have considered arguments by a defendant-appellee that were raised in a brief but not raised by cross-appeal.  *State v. Pinckney*, 10th Dist. No. 14AP-709, 2015-Ohio-3899, ¶ 21.  But whether we can consider arguments not relied on by the trial court in a criminal motion to suppress in order to affirm the trial court's decision is a different question from whether a party seeking to modify a trial court's order must cross-appeal.

{¶ 24} "A person who intends to defend a judgment or order against an appeal taken by an appellant *and who also seeks to change the judgment or order * * ** shall file a notice of cross appeal within the time allowed by App.R. 4."  (Emphasis added.) App.R. 3(C)(1).  And we have previously stated in matters of criminal sentencing that when there is a failure to raise a claimed error in a prior appeal, whether by direct or cross-appeal, the claimed error is not subject to review.  *State v. Burks*, 10th Dist. No. 07AP-553, 2008-Ohio-2463, ¶ 44.  When the trial court in April 2013 found no probable cause for the search warrant to be issued but found the warrant authorized search to be based on a good-faith exception, the State should have cross-appealed the finding of no probable cause during Dibble's appeal.  Since the 30-day deadline to cross-appeal has long expired, the State cannot now effectively argue that the trial court was free to reverse itself and find probable cause after this Court settled other matters concerning the case and no appeal had been made of the lack of probable cause finding.  Were we to otherwise permit this, especially in criminal cases, resolution of matters sought to be adjudicated on behalf of the people of Franklin County would lack finality.  That the detective and municipal court lacked probable cause to issue the warrant to search Dibble's home is therefore the law of the case.

### B. Whether the Detective Acted in Good-Faith Reliance Upon the Warrant

{¶ 25} Despite there being a lack of probable cause in Dibble's case, the State essentially argues that the grounds for the issuance of the search warrant must be considered in determining whether the affidavit upon which the warrant was issued was so lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable. (State's Brief at 23-24.) We agree. This goes to the question of a good-faith exception when there is a lack of probable cause. Whether there were "indicia of probable cause" is endemic to the question of whether there was probable cause. It is helpful to consider what evidence was appropriately before the trial court and whether that evidence objectively supported a belief by a person of reasonable caution that contraband or evidence of a crime would be found in Dibble's home. *See Florida v. Harris*, 568 U.S. 237, 243 (2013).

## 1. What Evidence Should Have Been Considered under Crim.R. 41

{¶ 26} The State argues that the trial court should have considered not only the face of the affidavit but also the content of what the detective stated he said to the judge who issued the warrant. (State's Brief at 42-58.) However, Crim.R. 41 provides:

> Before ruling on a request for a warrant, the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress *if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit.*

(Emphasis added.) Crim.R. 41(C)(2). Further, "supplemental testimony taken orally by the judge from an affiant will not be admissible at a hearing to suppress unless that testimony has been recorded by a court reporter or recording equipment, transcribed and made a part of the affidavit. If it is not so recorded and transcribed, it will not be admissible at a hearing on a motion to suppress." *State v. Shepcaro*, 45 Ohio App.2d 293, 298 (10th Dist.1975).[1] Because the detective's comments were not recorded or transcribed, even though they were reportedly offered under oath to the municipal court

---

[1] The dissent in this appeal questions the majority decision's reliance on *Shepcaro*, noting that the case was decided before the United States Supreme Court created the good-faith exception in *Leon*. Determinations of whether a search warrant is valid as executed and whether a good-faith exception applies are separate steps in a comprehensive analysis of whether evidence obtained via a law enforcement search should be suppressed. Our prior holding in *Shepcaro* serves as a longstanding guide for determining what evidence is admissible in a Crim.R. 41 suppression hearing, which as applied to the facts of this case, first requires a determination of whether or not a search warrant is valid or valid as executed. Under the later decided *Leon* and its progeny, the good-faith exception to execution of an invalid search warrant occurs *after* an analysis is performed under Crim.R. 41, which by its terms defines what quality of evidence is admissible. We find no basis in the law for applying an evidentiary standard to support a good-faith exception that is different from or less restrictive or reliable than what evidence is required to determine the validity of a search warrant.

judge, they were not admissible in the common pleas court at the hearing on Dibble's motion to suppress evidence to be offered in support of the felony charges against him.

{¶ 27} The State argues that although Crim.R. 41(C) may purport to bar the use of such statements to prove probable cause, such statements should nonetheless be considered on the question of whether or not the detective acted in good-faith reliance on the warrant. (State's Brief at 44-46.) However, Crim.R. 41(C) sets forth what evidence is admissible "at a hearing on a motion to suppress," and both probable cause and good faith are issues central to the adjudication of motions to suppress. Crim.R. 41(C)(2); *Shepcaro*, at 298. Thus, testamentary evidence that is beyond the four corners of the affidavit and that is not transcribed and made part of the affidavit, is not admissible in a hearing to determine whether such an affidavit supports a good-faith belief by the officer executing the associated search warrant that the warrant complies with the law and constitutional principles or for any other purpose. We find no basis under Crim.R. 41 or the facts and history of this case to carve out any exception.

{¶ 28} And the seminal case defining the good-faith exception to a bad search warrant, *Leon* makes clear that as a matter of law an officer does not "manifest objective good faith in relying on a warrant based on an *affidavit* 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (Emphasis added.) *Leon* at 923, quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part), citing *Illinois v. Gates*, 462 U.S. 213, 263-64 (1983) (White, J., concurring in judgment). Most simply, *Leon* itself suggests that for the good-faith exception to apply, the important inquiry is what is in the affidavit that was offered in support of the warrant–not what an officer (long after the search has been executed and evidence obtained) may attempt to recall having said to the issuing judge or magistrate in an off-the-record conversation to achieve the warrant.

{¶ 29} We recognize that other districts have viewed the questions posed here using different analyses: *Compare State v. Lee*, 1st Dist. No. C-070056, 2008-Ohio-3157, ¶ 22-28; *State v. Gales*, 143 Ohio App.3d 55, 62-63 (8th Dist.2001); S*tate v. Klosterman*, 114 Ohio App.3d 327, 333 (2d Dist.1996) (evidence is limited by Crim.R. 41) *with State v. Mays*, 2d Dist. No. 23986, 2011-Ohio-2684, ¶ 31; *State v. Landis*, 12th Dist. No. CA2005-

10-428, 2006-Ohio-3538, ¶ 21 (evidence is not limited by Crim.R. 41). Yet there is generally agreement that,

> "[t]he purpose of Crim.R. 41(C) is to protect a defendant's rights against the introduction of oral evidence at a post-seizure hearing on a motion to suppress intended 'to bolster the affidavits that probable cause existed for the issuance of a warrant.' And the requirement that supplemental testimony be 'recorded [and] made a part of the affidavit' serves the additional purpose of removing any concern that a reviewing court will have to guess about the actual statements made to the magistrate [or judge] issuing the warrant."

(Footnotes omitted.) *Lee* at ¶ 26, quoting *State v. Shingles*, 46 Ohio App.2d 1, 3 (9th Dist.1974); Crim.R. 41(C), citing *State v. Jaschik*, 85 Ohio App.3d 589, 594 (11th Dist.1993). We hold that these concerns also apply to the question of whether an affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

{¶ 30} Thus Crim.R. 41(C)(2) prohibits admitting statements made on all issues that may be addressed in "hearing[s] on [] motion[s] to suppress," even when made under oath to the issuing judge or magistrate if they are not also "taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit." Crim.R. 41(C)(2). This limitation applies to the use of such evidence including on the question of whether an affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id.*

### 2. Constitutionality of Crim.R. 41

{¶ 31} The State argues that, even if it would apply, Ohio Rule of Criminal Procedure 41(C) is unconstitutional because, although the Fourth Amendment only requires an "oath or affirmation" to support a warrant, Crim.R. 41(C) purports to also require that the oath or affirmation be "transcribed, and made part of the affidavit." (State's Brief at 46-57.) However the Fourth Amendment sets forth "[t]he right of the people," not the rights of the State. Fourth Amendment to the U.S. Constitution. The State can neither assert nor defend its position under the rubric of the Fourth Amendment, since it has no Constitutional rights under the Fourth Amendment that can be violated.

{¶ 32} It should be emphasized that the Fourth Amendment establishes a floor, not a ceiling. *Arnold v. Cleveland*, 67 Ohio St.3d 35 (1993), paragraph one of the syllabus. That is, state governments may freely pass laws and promulgate rules without offending the Constitution that make it *more* onerous for the State to search and seize persons and property. State governments are only forbidden from passing laws or promulgating rules that would diminish the constitutionally protected "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Fourth Amendment to the U.S. Constitution.

{¶ 33} The State further argues that, even if Crim.R. 41(C) does not offend the United States Constitution, the Supreme Court of Ohio has exceeded its power in promulgating the rule because it is substantive, rather than procedural. (State's Brief at 50-53.) The State points out the Ohio Constitution requires that, "[t]he supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." Ohio Constitution, Article IV, Section 5(B). The Supreme Court of Ohio has applied this state constitutional provision, holding that "[r]ules promulgated pursuant to this constitutional provision must be procedural in nature." *State v. Slatter*, 66 Ohio St.2d 452, 454 (1981).

{¶ 34} Yet there is nothing to draw from in criminal or Constitutional law for a finding that the provision of Crim.R. 41 at issue in this case abridges, enlarges, or modifies any substantive right. The provision of Crim.R. 41(C)(2) at issue in this case regards what evidence "shall be admissible at a hearing on a motion to suppress." Crim.R. 41(C)(2). This procedural provision does not purport to alter the Fourth Amendment, nor does it not change the definition of probable cause, nor does it alter the requirements for obtaining a warrant, nor does it "abridge, enlarge, or modify" any other part of the right of citizens to be free from unlawful search and seizure. Ohio Constitution, Article IV, Section 5(B). Rather, this provision of the rule finds to be inherently unreliable, evidence introduced in a suppression hearing that was not preserved in the record when the warrant was sought. This provision of the rules is procedural. It is analogous to a rule of evidence, and rules of evidence are generally considered procedural within the limits of Article IV, Section 5(B) of the Ohio Constitution. *See State ex rel. Ohio Academy of Trial*

*Lawyers v. Sheward*, 86 Ohio St.3d 451, 491 (1999); *State v. French*, 72 Ohio St.3d 446, 450 (1995).

{¶ 35} In reviewing whether the fruits of the search of Dibble's home can be used as evidence against him in a criminal proceeding, there is no basis in the law or under the Constitution to consider statements made by the detective to the municipal judge issuing the search warrant that were not preserved in the record.

### 3. Whether the Warrant Affidavit was So Lacking in Indicia of Probable Cause as to Render Official Belief in its Existence Unreasonable

{¶ 36} "[P]robable cause to conduct a search [exists] when 'the facts available to [the searcher] would "warrant a [person] of reasonable caution in the belief" ' that contraband or evidence of a crime is present." *Harris* at 243, quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion); *Carroll v. United States*, 267 U.S. 132, 162 (1925), citing *Safford Unified School Dist. #1 v. Redding*, 557 U.S. 364, 370-71 (2009).

{¶ 37} In this case, the search warrant affidavit provided information about Dibble's activities with two women. (Hearing Ex. 1 at 5.) One woman, E.K., was known to the detective to have been over the age of consent. *Dibble*, 2012-Ohio-4630, ¶ 19 (noting that the affidavit "stated clearly that Victim #2 (E.K.) had graduated before the 'inappropriate' touching began"). E.K. reported that Dibble had touched her and taken photographs of her nude vaginal area, but nothing in the affidavit states that in taking these actions Dibble violated criminal statutes. (Hearing Ex. 1 at 5.) This does not tend toward a finding of probable cause to search Dibble's house.

{¶ 38} With respect to the student, E.S.[2], the detective's affidavit reports that Dibble ran his hands over her clothed buttocks and vaginal area at school. *Id.* Though the affidavit does not explicitly say so, a fair reading of the affidavit is that this sexual contact was offensive to E.S. Thus, the affidavit does fairly describe the crime of sexual imposition against E.S., an alleged violation of R.C. 2907.06(A)(1). As such, the detective's affidavit was sufficient to establish probable cause to arrest Dibble, because it provided information that would warrant a prudent person's belief that he had committed

---

[2] Although the affidavit did not address it, E.S. later disclosed that she was over 18 when Dibble touched her at school, and she was legally an adult at the time it occurred. (Aug. 15, 2013 Sentencing Tr. at 16, filed Oct. 24, 2013.)

the crime of sexual imposition.  *See Miller v. Sanilac Cty.*, 606 F.3d 240, 248 (6th Cir.2010), quoting *Henry v. United States*, 361 U.S. 98, 102 (1959) ("An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent [person] in believing that an offense has been committed.' ").  However, the affidavit did not establish probable cause to believe that evidence of any crime was likely to be found at Dibble's home.  As the United States Supreme Court stated, "[j]ust as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." *United States v. Ross*, 456 U.S. 798, 824 (1982).  Applying this maxim, probable cause to believe that Dibble offensively touched E.S. at school will not support a warrant to search Dibble's home.

**{¶ 39}** The detective's affidavit in support of the search warrant that was issued to search Dibble's home described two things: first, a sexual course of conduct with one adult woman (E.K.) involving photographs taken with a digital camera that did not indicate a crime, and second, offensive sexual contact while clothed with a student (E.S.) at a school (who later proved to be of legal age).  No reasonable law enforcement officer could think that these two pieces of information, separately or together, would suggest a warranted belief that there was probable cause to search Dibble's home.  While Dibble used a digital camera with E.K., which could support the inference that downloading photos from the camera would have to occur on a computer, likely located at his home, his photographic conduct was not a crime.  And while Dibble allegedly committed a crime while at school when he offensively touched E.S., there is no evidence in the warrant that he took photographs of her.  In short, no events, legal or illegal, described in the detective's affidavit occurred at Dibble's home, and his alleged, illegal touching of E.S. did not result in any physical evidence that reasonably could be believed to be stored at his home.  We do not find any manifestation of "objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Internal quotation marks omitted.) *Leon* at 923.

## IV.  CONCLUSION

**{¶ 40}** The affidavit the police relied on to search Dibble's house provided information about consensual nude photographs Dibble took of one young adult woman

who graduated from the school where he was employed as a teacher. It also provided information that Dibble offensively touched another young woman at school without her consent. Photographs consensually taken by Dibble of an adult female whom he met through teaching at the school she graduated from, though likely to be found at Dibble's house, were not evidence of a crime. An affidavit that describes criminal offensive touching of another woman, a student at the school where Dibble taught, but describes no further activity involving Dibble's home does not support the search of his house. As such, the affidavit objectively produces no set of facts that a reasonable law enforcement officer could in good faith rely on to search a house. There being no probable cause for the issuance of the warrant, we hold that the good-faith exception of *Leon* does not apply. Objectively, the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Internal quotation marks omitted.) *Leon* at 923. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and order judgment entered on the motion to suppress in favor of Dibble.

*Judgment reversed.*

TYACK, P.J., concurs.
SADLER, J., dissents.

SADLER, J., dissenting.

{¶ 41} Because I believe the trial court did not err when it determined that the good-faith exception to the exclusionary rule applied and denied appellant's motion to suppress, I respectfully dissent.

{¶ 42} In this appeal, appellee argues that Detective Wuertz's affidavit, as supplemented by his testimony at the suppression hearing, establishes the required nexus between appellant's home and a crime against E.S.[3] I agree.

---

[3] For purposes of this dissent, I shall refer to the decision of the Supreme Court of Ohio in this case as "*Dibble II*" (*State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630), this court's decision in the subsequent appeal as "*Dibble III*" (*State v. Dibble*, 10th Dist. No. 13AP-798, 2014-Ohio-5754), and this court's decision on reconsideration as "*Dibble IV*" (*State v. Dibble*, 10th Dist. No. 13AP-798 (Mar. 3, 2016) (memorandum decision)).

{¶ 43} At the suppression hearing in this case, Detective Wuertz gave the following testimony:

> [Prosecutor:] Did she [E.S.] indicate any other activity, either photographs or touching or otherwise?
>
> A. She did. She relayed that she felt kind of strange. There were times that [appellant] took pictures of them in kind of -- she described them as unitard suits in order for costumes for plays and that in describing those she said he would have them specific instructions to wear nothing underneath these unitard suits, and he would then take pictures of them wearing these unitard suits in some way to aid in the creation of costumes for them.
>
> [Prosecutor:] And these unitards, they were somewhat see-through, you indicated?
>
> A. Correct. She described them as practically see-through, if not see-through.
>
> * * *
>
> [Prosecutor:] Okay. Do you recall what else you told her [Judge Peeples], whether it be in answer to a question or other testimony?
>
> A. I believe I went back to a little more detail about how the relationship with these girls was started in 7th grade, how they were cultivated to the point to where they were.
>
> I told her about the photographs of the unitards and the see-through unitards that they felt uncomfortable about, some just different things to give her a little bit more background than what was actually typed in the search warrant.
>
> I believe in that I said due to the possible see-through of the unitards I was very concerned about where those photos were and what exactly those were being used for.

(June 29, 2010 Tr. at 27, 34.)

{¶ 44} In the decision on appellant's motion to suppress, the trial court found that Detective Wuertz's affidavit "discusses two similar situations of deviant behavior and connects aspects of that behavior to the location specified in the warrant." (Aug. 16, 2016 Decision at 2.) The trial court also noted that "[t]he officer discussed events involving a

camera used to take illicit photos of the minor victim and a similar course of conduct with the victim E.K."[4]  (Aug. 16, 2016 Decision at 2.)  There is no question that the affidavit states that appellant had sexual contact with both E.K. and E.S.  The affidavit connects appellant's sexual contact with E.K. to appellant's home because the affidavit states that appellant took digital photographs of E.K.  However, the affidavit does not state appellant took digital photographs of victim E.S.  Thus, the trial court's findings evidence consideration of Detective Wuertz's sworn, but unrecorded, testimony before the issuing judge.

{¶ 45} After the remand order issued by this court in *Dibble III*, the state filed a motion for reconsideration wherein the state argued that our decision erroneously limited the trial court's review, on remand, to the four corners of the affidavit.  In overruling the motion, this court stated: "This court did not provide any instruction to the trial court regarding the evidence that it should or should not consider in making its determination whether Detective Wuertz conducted the search in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate." *Dibble IV* at ¶ 11.[5]

{¶ 46} The majority notes that Civ.R. 41(C)(2) confines trial court review to the four corners of the affidavit and any recorded testimony made part of the affidavit when determining probable cause and thus finds that the trial court could only review the sworn affidavit in determining whether the good-faith exception applied to these facts.  I disagree.  However, in determining whether the good-faith exception to the exclusionary rule applies, several Ohio appellate courts have held that a reviewing court may look beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officer executing the search warrant did so in good-faith reliance on the magistrate's issuance of the search warrant.  *State v. O'Connor*, 12th Dist. No. CA2001-08-195, 2002-Ohio-4122, ¶ 21.  *See also State v. Oprandi*, 5th Dist. No. 07 CA 5, 2008-Ohio-168, ¶ 45, *appeal denied*, 118 Ohio St.3d 1462, 2008-Ohio-2823; *State v.*

---

[4] The majority cites evidence produced at a sentencing hearing in concluding that E.S. was 18 years of age when the sexual contact occurred.  The affidavit identifies victim E.S. as a high school senior at the time the sexual contact occurred but does not state her age.

[5] I disagree with appellant's contention that the Supreme Court in *Dibble II* prohibited the trial court from considering information outside the four corners of the affidavit in determining whether the good-faith exception applied.  Neither the Supreme Court in *Dibble II* nor this court in *Dibble III* provided any instruction to the trial court regarding the evidence that it should or should not consider in determining whether to apply the good-faith exception.  *Dibble IV* at ¶ 11.

*Mays*, 2d Dist. No. 23986, 2011-Ohio-2684, ¶ 31; *State v. Landis*, 12th Dist. No. CA2005-10-428, 2006-Ohio-3538.

{¶ 47} The principle underlying these cases is the pronouncement in *United States v. Leon*, 468 U.S. 897 (1984), that " 'all of the circumstances' " may be considered in determining whether a reasonably well-trained police officer would have known that the search was illegal despite the magistrate's authorization. *O'Connor* at ¶ 22, quoting *Leon* at 922, fn. 23; *Oprandi* at ¶ 45, quoting *Leon* at 922, fn. 23. Additional support for this position resides in the language of Crim.R. 41(C)(2), which expressly limits the scope of the recorded testimony requirement to the question whether "probable cause exists" and to "[t]he finding of probable cause." The Supreme Court of the United States released the *Leon* decision in 1984 and the Supreme Court of Ohio issued its decision in *State v. George*, 45 Ohio St.3d 325 (1989), in 1989. Crim.R. 41 has been amended several times since the establishment of the good-faith exception to the exclusionary rule, but the recorded testimony requirement in the rule has never been extended beyond the determination of probable cause.[6] Nor has the Supreme Court of Ohio issued a decision prohibiting a trial court from considering unrecorded oral testimony in determining the applicability of the good-faith exception to the exclusionary rule.

{¶ 48} The good-faith exception applies where the search warrant affidavit " 'contain[s] a minimally sufficient nexus between the illegal activity and the place to be searched' but [does] not contain sufficient information to establish probable cause." *Dibble III* at ¶ 20, quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir.2004). The question for the court in such cases is " 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.' " *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir.2005), quoting *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir.1996). In the context of the good-faith exception,

---

[6] The majority cites this court's decision in *State v. Shepcaro*, 45 Ohio App.2d 293 (10th Dist.1975), for the proposition that Crim.R. 41(C)(2) prohibits a trial court from considering oral unrecorded testimony in ruling on the issue of probable cause and the applicability of the good-faith exception. However, this court decided *Shepcaro* in 1975, nine years before the Supreme Court of the United States created the good-faith exception and thirteen years before the Supreme Court of Ohio adopted the good-faith exception in *George*. Consequently, *Shepcaro* does not stand for the proposition that oral unrecorded testimony is inadmissible at a suppression hearing where the question is whether the good-faith exception applies.

reasonably well-trained officers may infer a nexus between a place to be searched and items sought, even when the affidavit fails to establish probable cause. *Carpenter* at 596.

{¶ 49} In *O'Connor*, an individual repairing O'Connor's computer alerted authorities that the computer contained downloaded images of child pornography. Police then obtained a search warrant and seized the computer from the home of the repair person. Police subsequently obtained a second warrant to search O'Connor's residence for additional evidence relating to child pornography. As a result of the search, police discovered compact discs and floppy discs containing photographs depicting child pornography.

{¶ 50} At the hearing on O'Connor's motion to suppress, the state presented the testimony of several witnesses, including the detective/affiant and the municipal court judge who issued the warrant. The testimony established that detectives informed the issuing judge that the computer came from O'Connor's residence and that O'Connor had, at one point in time, retrieved his hard drive from the repairmen's residence to copy files so as not to lose them during the reformatting process.

{¶ 51} The trial court denied O'Connor's motion to suppress and O'Connor appealed. The Twelfth District Court of Appeals found the warrant was not supported by probable cause because the computer had been seized from the repairmen's home, and there was nothing in the affidavit to establish a nexus between appellant's home and further evidence of child pornography. However, when the Twelfth District reviewed the transcript of the suppression hearing, the court found that oral statements provided to the issuing judge supplied the necessary nexus between O'Connor's residence and the items to be seized. *Id.* at ¶ 19. The Twelfth District held that the good-faith exception to the exclusionary rule applied, and the trial court had not erred by denying the motion to suppress. *Id.* at ¶ 23.

{¶ 52} In my view, the facts in this case are similar to those in *O'Connor* and require the same conclusion. Detective Wuertz is a 13-year veteran of the Upper Arlington Police Department. At the time of this investigation, his assignment included "juvenile crime, juvenile sex crimes, and narcotics investigations." (June 29, 2010 Tr. at 4.) Detective Wuertz testified at the suppression hearing that he told the municipal court judge, under oath, appellant had taken inappropriate photographs of both E.K. and E.S in

see-through unitards without undergarments. Though this information is not contained in Detective Wuertz's affidavit, such information was properly presented to and considered by the trial court and is sufficient to create a nexus between appellant's home and evidence of a crime against E.S. It is also sufficient to support a finding by the trial court that the officers who served the warrant, including Detective Wuertz, relied on a warrant based on an affidavit that contained a sufficient nexus between the illegal activity and the place to be searched. When the affidavit is supplemented by the unrecorded oral testimony of Detective Wuertz, there is no question that the affidavit contains the indicia of probable cause.

{¶ 53} In *Davis v. United States*, 564 U.S. 229 (2011), the Supreme Court of the United States discussed the development of the good-faith exception to the exclusionary rule as follows:

> The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. *Herring* [*v. United States*, 555 U.S. 135, 143 (2009)]. When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. *Id.*, at 144 * * *. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, *Leon, supra*, at 909 * * * (internal quotation marks omitted), or when their conduct involves only simple, "isolated" negligence, *Herring, supra*, at 137 * * *, the " 'deterrence rationale loses much of its force,' " and exclusion cannot "pay its way." *Leon, supra*, at 919 * * * (quoting *United* States *v. Peltier*, 422 U.S. 531, 539, 95 S. Ct. 2313, 45 L. Ed. 2d 374 (1975)).

*Id.* at 238.

{¶ 54} The Supreme Court in reversing this court in *Dibble II* expressly determined that Detective Wuertz did not "knowingly and intentionally includ[e] false information in his search-warrant affidavit." *Id.* at ¶ 25. In light of that decision, the only misconduct that can be attributed to Detective Wuertz in this case is a simple, isolated mistake in failing to include an averment in his affidavit that appellant had also taken photographs of E.S. in a see-through unitard without undergarments. The trial court stated, "based upon the evidence, any deficiencies within the affidavit are not so egregious that the executing officers could not reasonably presume the warrant was valid." (Aug. 16, 2016 Decision at

2.)  I agree with the trial court.  In my view, the relatively minor omission from the search warrant affidavit in this case does not justify the application of the exclusionary rule.

{¶ 55}  For the foregoing reasons, I agree with those appellate districts holding that a trial court, in ruling on a motion to suppress, may rely on oral unrecorded testimony provided to the issuing judge when making the determination whether the good-faith exception applies.  The record supports the trial court's conclusion that the officers who conducted the search of appellant's residence, including Detective Wuertz, did not rely on a warrant based on an affidavit that was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Leon* at 923.  Therefore, the trial court properly determined that the good-faith exception to the exclusionary rule applied and denied appellant's motion to suppress.[7]

{¶ 56}  Accordingly, I would overrule appellant's sole assignment of error and affirm the judgment of the trial court.  Because the majority holds otherwise, I respectfully dissent.

―――――――――――

[7] My ruling on this issue would render moot the state's argument regarding the constitutionality of Crim.R. 41(C)(2).